IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY C. REED, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 11-00372-N |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|      Defendant. | ) |

ORDER

Plaintiff, Kimberly C. Reed ("Reed"), brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income Benefits ("SSI") from May 16, 2008 (Tr. 79. This action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73 (doc. 22) and pursuant to the consent of the parties (doc. 21). The matter came on for oral arguments on August 20, 2012, at which Colin Kemmerly appeared for the plaintiff and Assistant United States Attorney Patricia Beyer represented the Commissioner. Upon consideration of the parties' respective arguments, the administrative record (doc. 12) and the parties' respective briefs (docs. 13 and 16), the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED**.

I.     Procedural History.

On October 29, 2008, Reed filed an application under Title XVI of the Social

Security Act (the Act), 42 U.S.C. §§ 1381-83c supplemental security income. (Tr.  79-

84).  Reed alleged that she became disabled on May 16, 2008, due to severe depression

with bipolar disorder and attention deficit disorder (ADD) (Tr. 91).   Reed later claimed a

back problems and migraines (Tr. 38). Reed's claim was denied on December 31, 2008

(Tr. 54-59).  Reed's request for a hearing was timely filed on January 19, 2009.  (Tr. 64-

66).  A hearing before Administrative Law Judge ("ALJ") was held on December 11,

2009 (Tr. 29-52),  at which Reed (Tr. 35-46) as well as Sue Berthaume, a vocational

expert (Tr. 47-51), testified.   Reed was born on November 15, 1972, and was 37 years

old at the time of his administrative hearing before the ALJ. (Tr. 35).

On January 29, 2010, the ALJ entered an unfavorable decision  (Tr. 11-28). The

Appeals Council denied review of the ALJ's decision on May 25, 2011 (Tr. 1-5), making

the November 23, 2010 decision the final administrative decision. *See* 20 C.F.R. §§

404.981, 416.1481.[1]  Reed now timely appeals from that decision and all administrative

remedies have been exhausted.

II.     Issue on Appeal.

1.     Whether the ALJ erred by rejecting the opinion of Reed's treating

physician that Reed was disabled due to her back pain.

_____

[1] All references to the Code of Federal Regulations (C.F.R.) are to 1 the 2011 edition

III.    Standard of Review.

A.    Scope of Judicial Review.

In reviewing claims brought under the Social Security Act, this Court's role is a limited one.  Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. *See*, 42 U.S.C. § 405(g); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Chater, 84 F.3d at 1400; Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991).  *See also*, Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Lynch v. Astrue, 358 Fed.Appx. 83, 86 (11th Cir. 2009); Martino v. Barnhart, 2002 WL 32881075, * 1 (11th Cir. 2002); Chester v. Bowen, 792

3

F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

> B.   Statutory and Regulatory Framework.

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. Patterson v. Bowen, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

4

which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental

impairment" is one that "results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation

process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§

404.1520, 416.920 (2010).  The Eleventh Circuit has described the evaluation to include

the following sequence of determinations:

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[2]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  *See also* Bell v. Astrue, 2012

WL 2031976, *2 (N.D. Ala. May 31, 2012); Huntley v. Astrue, 2012 WL 135591, *1

(M.D. Ala. Jan. 17, 2012).

_____

[2] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. Id. It also can contain both exertional and nonexertional limitations. *Id*. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids"),or hear testimony from a vocational expert (VE). Id. at 1239–40.

IV.    Relevant Facts.

1.    Reed's vocational background.

Reed was not yet 39 years old on the date of the ALJ's decision (Tr. 35,79).  She completed the 9th grade (Tr. 35), and last worked in 2005 as a "substitute janitor for the school board." (Tr. 35).  Prior to that time, Reed worked "about a month" as a waitress. (Tr. 36).

2.   <u>Medical Evidence</u>.

The record contains evidence that Reed has been diagnosed and treated for sleep apnea (Tr. 391-95, 402-03, 420-21)[3]; bilateral carpal tunnel syndrome, which was resolved with carpal tunnel release surgery on both wrists (Tr. 176-202); headaches (Tr. 402-03); and depression and bipolar disorder, resulting in psychiatric hospitalizations (Tr. 203-68, 296-312, 332, 335-73).

This appeal principally involves Reed's complaint of back pain.  In support of the contention that the ALJ committed reversible error, Reed relies on the Clinical Assessment of Pain form completed on December 4, 2009, by her treating physician, Dr. Barbara Mitchell (Tr. 333-34).  On that form, Dr. Mitchell reports, in pertinent part, as follows: she had treated Reed for over seven years; Reed had a physical condition that was the underlying cause of Reed's pain, although there were no clinical or laboratory findings to support the diagnosis of any physical condition which was the underlying cause of Reed's pain; the pain will distract Reed from adequately performing daily activities or work; physical activity, such as walking, standing, bending and stooping will "greatly increase" Reed's pain; pain can be expected to be "severe" and limit Reed's ability to perform her previous work; and Reed cannot engage in any form of gainful employment. (Tr. 333-34).  Dr. Mitchell does not identify any physical condition

---

[3] Reed was diagnosed with sleep apnea on July 13, 2006 (Tr. 391, 403, 420-21).  She was "treated effectively with nasal CPAP [and] provided with a CPAP machine to use at home."  (Tr. 421).  The ALJ found that Reed's sleep apnea "can be effectively treated with the CPAP machine" but Reed "does not use it because she wakes up at night and feels like she is smothering."  (Tr. 24).

underlying Reed's pain and, in addition, indicates that no clinical or laboratory findings support the diagnosis of a physical condition underlying Reed's pain (Tr. 333). Dr. Mitchell also indicates that Reed has not been prescribed any pain medications; that no restrictions or limitations exist with respect to Reed's daily activities; and that the only treatment planned for Reed in the following year includes: (1) CPAP, (2) Psychotherapy, (3) Diet, and (4) Exercise. (Tr. 334).

On order from Dr. Mitchell, an x-ray of Reed's cervical spine was taken on November 1, 2007 and showed "no abnormalities" (Tr. 439). In December 2008, Reed was evaluated by Dr. Mark McCutcheon in connection with her disability application (Tr. 269-70). According to Dr. McCutcheon's report dated December 23, 2008, Reed reported that she was applying for disability because she was "unable to work with people"; while at work, she would get angry, yell at people, and leave (Tr. 269). Reed also reported that she did janitorial work part-time for the Mobile County School Board for three years. (Tr. 269) Reed also reported depression but said that it was not persistent. (Tr. 269) Reed told Dr. McCutcheon that she functioned well on her medications. (Tr. 270). Upon examination of Reed, Dr. McCutcheon found that she had full range of motion in her neck, arms, wrists, and legs; full (5/5) strength in all of her extremities; symmetrical reflexes; and an ability to heel toe walk and rise from a squatting position. (*Id*.). Reed did not report any back pain but complained about "arthritis in her fingers and that she has right tennis elbow." (Tr. 269). Dr. McCutcheon concluded that he "[did not] see where this lady has a disability . . . she should take her

medications and continue with her counseling with her psychiatrist so that she can learn to work with people and how to deal with everyday life" (Tr. 270).

On July 29, 2009, Reed presented to the emergency room with back pain, which she reported began about a year before but became "worse in the past week." (Tr. 383). Reed described the pain as "mild and in the area of the lower lumbar spine and radiating to the right calf and to the left calf." (*Id*.)  Dr. Marty Mcdonald reported that Reed was in no acute distress but had soft tissue tenderness of the back and "mildly limited" range of motion in the back "secondary to pain." (Tr. 383-84).  Reed's extremities exhibited normal range of motion as did her neck, which was also noted to be "nontender" and "painless" (Tr. 384).  X-rays of Reed's back and lower spine were normal and "reveal[ed] no acute disease." (*Id*.).  Reed's diagnosis was "[p]ossible back pain: with sciatica" and she was discharged  with a non-refillable prescription of 15 Lortab 5 mg pills which could be taken one or two at a time every six hours "as needed for pain." (*Id*.).

On August 28, 2009, Reed presented to Dr. William Crotwell, III with back pain described as follows:

> PRESENT ILLNESS:  36year old white female complaining of lumbar spine pain onset several years ago.  It has gotten worse over the last six months.  No accident and no injury.  She says she has been treated only by a GP in the past with some medications.  Basically she has pain in the back. It radiates down the posterior part of both legs down to the knees.  The right one is worse.  She has numbness and tingling that goes down to the right heel.  The numbness is just in the heel and does not radiate down. Coughing and sneezing do increase the pain.  No loss of control of bowel or bladder.  It is 70 percent back pain and 30 percent bilateral legs.  She has 6/10 pain.

(Tr. 319).  Dr. Crotwell's physical examination revealed that Reed had difficulty removing her socks and trouble bending; tight muscles next to her spine; normal toe and heal walk; could flex and bend to 40 degrees; had normal reflexes and sensory function as well as full (5/5) motor strength; and could perform straight leg raises with no pain. (Tr. 319).  X-rays of the lumbar spine showed mild scoliosis (curvature of the spine); narrowing of the spinal joints (facets) in some places; mild, non-severe disc space collapse in some places; normal hips; and a non-arthritic pelvis (Tr. 319).  Dr. Crotwell diagnosed lumbar pain and strain and degenerative disc disease, and prescribed pain medication and physical therapy (Tr. 319).

On September 3, 2009, Reed presented to physical therapist Paul A. Mavrakos, who noted decreased lumbar range of motion and strength and pain[4].  (Tr. 317).  Mr. Mavrakos reported that Reed rated her pain 7 out of 10 and said it was "[g]enerally worse with standing, better with sitting."  (Id.).  He also noted that Reed's posture "reveals a normal lordosis [with] iliac crests level [and] leg lengths equal."  (Id.).  The treatment plan for Reed included: physical therapy sessions three times a week for four weeks, moist heat pack with electrical current stimulation, ultrasound, supine traction of 75-80 pounds, joint mobilization, home exercise program and placement of a tens unit. (Tr. 318).  Mr. Mavrakos determined that Reed's prognosis and motivation were "good" (Id.).

On November 6, 2009, Reed presented to Dr. Mitchell with "multiple complaints

---

[4] Mr. Mavrakos specifically reported that Reed's range of motion included flexion of 25 percent with pain, extension of 25 percent with pain, rotation right and left of 50 percent with severe pain, and side flexion right and left of "25 percent with decreased intersegmental mobility going to the left."  (Tr. 317).

with pain down her right butt cheek and down her right leg [and] having a lot of weight

gain and a lot of swelling."  (Tr. 404). Dr. Mitchell stated that Reed's back pain "sounds

like lumbar radiculopathy" and noted that Reed was seeing Dr. Crotwell for treatment of

her back pain (Tr. 405).  A month later, on December 4, 2009, Reed again presented to

 Dr. Mitchell and complained of "morning headaches, paresthesias[5], pain, numbness in

her legs, [and] pain in her neck" (Tr. 402).  Dr. Mitchell examined Reed and noted no

physical abnormalities (Tr. 402). Dr. Mitchell also commented that Reed "has a 15-year-

old autistic son that takes up a lot of her care" (Tr. 402).  The same day, Dr. Mitchell

completed a "Clinical Assessment of Pain" form and noted that she had treated Reed for

seven years (Tr. 333-34).  Although Dr. Mitchell opined that there was an underlying

cause for Reed's pain, she did not identify the cause (Tr. 333).  Further, Dr. Mitchell

acknowledged on the form that there were no clinical or laboratory findings to support

her diagnosis (Tr. 333).   Dr. Mitchell indicated that Reed's pain would distract her from

adequately performing daily activities and work, and that physical activity would greatly

increase Plaintiff's pain and cause distraction (Tr. 333).  She also indicated that Reed's

pain was severe and could be expected to limit her effectiveness (Tr. 334).  However, Dr.

Mitchell also stated that Reed had not been prescribed narcotic pain medications and did

not have any restrictions or limitations on her activities of daily living.  The only planned

---

[5] Paresthesia refers to a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, happens without warning, is usually painless and described as tingling or numbness, skin crawling, or itching.  It is also described as the feeling of "pins and needles" which may arise if you sat with your legs crossed too long.  National Institute of Neurological Disorders and Stroke, National Institute of Health, www.ninds.nih.gov .

"treatments or procedures" for Reed during the following year included use of the CPAP machine, psychotherapy, diet, and exercise (Tr. 334).   Despite finding that Reed "has a 15-year-old autistic son that takes up a lot of her care" (Tr. 402) and has no restrictions or limitations on her activities of daily living (Tr.334), Dr. Mitchell declared that Reed could not engage in any gainful employment on a full time basis (Tr. 334).

3.   Reed's testimony.

Reed testified that her back was "[n]ot good" and that she had severe muscle spasms in her back (Tr. 38). She reported having had migraines, for which she took Ibuprofen (Tr. 38-39). Reed testified she had a lot of pain, was not able to stand for very long, and that she hurt all the time (Tr. 40). She rated her pain as an "8 to 9" on a scale of one to 10, with 10 being the worst possible pain (Tr. 40). Reed testified that her pain interfered with her ability to do household chores, such as mopping, washing dishes, and vacuuming (Tr. 40). Reed estimated that she could lift five pounds frequently and could stand or sit for 20 to 30 minutes each at a time (Tr. 41-42). She said her medications made her sleepy and caused her to gain weight (Tr. 43, 45-46).

4.   Vocational expert's testimony.

A vocational expert, Sue Berthaume, testified that Reed's past work as an assistant janitor would actually be classified as a janitor with an exertional level of "medium" and a skill level of "semi-skilled" or "SVP of 3."  (Tr. 47).  In response to the ALJ's first

hypothetical,[6] Ms. Berthaume testified that such an individual could not perform Reed's past relevant work, but could perform the following jobs that existed in the national economy:  1,000,000 light and unskilled jobs as a housekeeper, cleaner; 400,000 light and unskilled jobs as a garment folder; and 3,000 light and unskilled jobs as a production assembler.

In response to a second hypothetical,[7], Ms. Berthaume identified jobs existing in the national economy which could be performed by such an individual:  176,000 sedentary and unskilled jobs as a microfilm preparer;  143,000 sedentary and unskilled jobs as surveillance system monitor; and 48,000 sedentary and unskilled jobs as a collator operator. (Tr. 48-49).

Reed's counsel proposed a hypothetical to Ms. Berthaume of an individual with the same education and work experience of Reed but added a limitation that, "such an individual suffers from mood disorder, back disorder, she has muscle spasm in her back, she suffers migraine headaches and is obese, as a result of those impairments, the side effects from the medications that she takes, [and] she would have the limitations that Dr. Mitchell found (Exhibit 14F)."  (Tr. 49).   Ms. Berthaume  testified that such an

---

[6] The ALJ asked Ms. Berthaume to consider a hypothetical individual who was Reed's age and had the same education and work background, was limited to performing light work which would require the individual to only occasionally crouch, kneel, stoop, climb ramps and stairs and balance, would never require the individual to climb ladders, ropes or scaffolding, was able to understand and remember and carry out very short and simple instructions,, and could pay attention for up to two hours at a time.  (Tr. 47).

[7] The ALJ's second hypothetical was the same as the first except that the individual was limited to performing no more than sedentary work, rather than light work.  (Tr. 48).

individual could not perform Reed's past relevant work and that no jobs existed in the national or regional economy for such an individual. (Tr. 49).

Reed's counsel proposed a second hypothetical of an individual with the same education and work experience of Reed but added the following: "such individual suffers from chronic low back pain, depression, migraine headaches, and as a result or combination of those impairments would be able to stand for less than one half hour at a time, sit for less than a half hour at a time, and at least twice a week would have to take breaks from work for at least an hour at a time for unscheduled times due to the pain she would be experiencing." (Tr. 49-50). Ms. Berthaume testified that such an individual could not perform Reed's past relevant work and that no jobs existed in the national or regional economy for such an individual. (Tr. 50).

5.    ALJ's Decision.

The ALJ found that Reed had not engaged in substantial gainful activity since her alleged onset date, and that she had severe impairments, namely bipolar disorder, migraines, depression, sleep apnea, and lumbar degenerative disc disease. (Tr. 16, Findings 1 and 2). The ALF further found that Reed's impairments did not meet or equal the criteria of a per se disabling impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 16, Findings 3). The ALJ concluded, based on consideration of the record as a whole, that Reed could perform light work with some additional limitations (i.e., that she could occasionally crouch, kneel, stoop, balance, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; had the ability to understand, remember, and carry out very short, simple instructions; and pay attention for up to two hours at a time) (Tr. 17-26,

14

Finding 4). Based on vocational expert testimony, the ALJ concluded that Reed could not

perform her past relevant work, but could perform other jobs that existed in the national

economy (Tr. 26-27, Findings 5-9). Thus, the ALJ found that Reed was not disabled

within the meaning of the Act (Tr. 27, Finding 10).

6.      Evidence Submitted to the Appeals Council.

A January 2009 lumbar spine x-ray showed that Reed's lumbar spine was

normal with well-maintained body heights and disc spaces, satisfactory alignment, and no

fracture or other abnormality (Tr. 167). A February 2010 MRI of Reed's lumbar spine

showed intact structures, normal alignment, and some "mild to moderate" degenerative

disease "with focal protrusion at L4-L5" but no spinal cord or nerve root impingement

(Tr. 162-65).  In May 2010 and March 2011, Dr. David Walsh gave Reed steroid

injections in her lumbar spine for her pain and described Reed's pain levels as 10  before

the procedure and 2 after the procedure. (Tr. 467-70).

The Appeals Council found the additional evidence was "not contrary to the

weight of all the evidence now in the record [and, therefore,] did not provide a basis for

changing the ALJ's decision (Tr. 1-2).

V.      Analysis.

**The ALJ did not err by rejecting the opinion of Reed's treating physician, Dr. Mitchell, that Reed was disabled due to her back pain.**

Reed argues, in sum, that the ALJ committed reversible error:

[B]y basing her decision to reject the medical opinion of Plaintiff's treating
physician, Dr. Barbara Mitchell, MD, on evidence not offered at the
hearing or included in the record; to wit, inferring Dr. Mitchell's motives
(described as relying on and uncritically accepting as true, Plaintiff's

15

subjective symptoms as the sole basis for completing the pain form) for completing the pain questionnaire, without citing any acceptable medical evidence or explanation to support her own medical finding?

(Doc. 13 at 2).  Reed further argues that the ALJ "ordered no consultative examination to establish substantial evidence to support a maximum residual functional capacity in this case."  (*Id*. At n.2, *citing* 20 CFR § 416.919)[8].

The Commissioner argues that, although Dr. Mitchell opined that Reed could not engage in any form of gainful employment on a full-time basis due to her pain, "Dr. Mitchell [] did not support her opinion with any specific limitations regarding [Reed's] ability to perform basic work activities[;][9] . . . [and did not] identify the underlying cause of [Reed's] allegedly disabling pain."  (Doc. 16 at 6-7, *citing* Tr. 333-34).  According to the Commissioner, it was, therefore, reasonable for the ALJ to "assign[] Dr. Mitchell's conclusory opinion 'little weight'."  (Doc. 16 at 7).

Controlling weight may be given to a treating physician's medical opinions if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  The Eleventh Circuit has addressed this issue as follows:

---

[8] Social Security Regulation 20 C.F.R. § 416.919 provides, in pertinent part, that "[t]he decision to purchase a consultative examination will be made on an individual basis in accordance with the provisions of § 416.919a through §416.919F," regulations  which support the purchase of consultative examinations "to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on [a] claim."

[9] Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. See 20 C.F.R. § 416.921(a).

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." Lewis, 125 F.3d at 1440; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241. With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41.

Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  The

Eleventh Circuit concludes that "'good cause' exists when the: (1) treating physician's

opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or

(3) treating physician's opinion was conclusory or inconsistent with the doctor's own

medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004)(*quoting*

Lewis, *supra* 125 F.3d at 1440). An ALJ must clearly articulate his or her reasons for

discounting a treating physician's opinion.  *Id.*

The ALJ in this case identified good cause for discounting Dr. Mitchell's opinion.

First, Dr. Mitchell did not provide any explanation for her opinion (Tr. 25; *see* Tr. 333-

34). *See* 20 C.F.R. § 416.927(d)(3) ("The better an explanation a source provides for an

opinion, the more weight we will give that opinion."); Phillips, 357 F.3d at 1240-41

(good cause to not assign substantial or considerable weight to a treating physician's

opinion exists when the opinion is conclusory).   Dr. Mitchell not only failed to identify

the physical condition underlying Reed's allegedly debilitating pain, but she explicitly

stated that there were no clinical or laboratory findings to support the diagnosis of any

physical condition which was the underlying cause of Reed's pain.[10] (Tr. 333). Moreover, the ALJ noted that the same day Dr. Mitchell offered her opinion, she examined Plaintiff and found no abnormalities (Tr. 25, *see* Tr. 402-403). This is a valid basis for discounting Dr. Mitchell's opinion regarding Reed's inability to work.

Second, Dr. Mitchell's opinion that Reed is disabled is inconsistent with other medical evidence in this record. *See* 20 C.F.R.§ 416.927(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); Lewis, 125 F.3d at 1441 (ALJ reasonably discounted an opinion that was inconsistent with other record evidence). For example, Dr. Mitchell's opinion that Reed is unable to work is inconsistent with Dr. McCutcheon's opinion, following his examination of Reed, that she is not disabled.  (*Cf.*  Tr. 269-70 and Tr. 333-34; Tr. 20, 22-23).  Dr. McCutcheon's conclusion was based not only on Reed's "normal Physical exam," but on the findings that Reed "has a history of migraines controlled when she takes her medications"; "has no troubles with activities of daily living and is able to cook clean and take care of her children [which he reported to be 3, 12, 14 and 17 years old

---

[10] Reed's argument that the ALJ failed to fully develop the record by not seeking clarification from Dr. Mitchell regarding her opinion is without merit.  Doc. 13 at 5. Although the ALJ is "bound to make every reasonable effort to obtain from the claimant's treating physician(s) all the medical evidence necessary to make a determination," the burden was and is on Reed to prove that she is disabled. *See* Sellers v. Barnhart, 246 F.Supp.2d 1201, 1210 (M.D. Ala. 2002)("[T]he ALJ is not required to order a consultative examination unless the record, *medical* and *non-medical,* establishes that such an examination is necessary to enable the ALJ to render a decision.")(emphasis in original; *citing* 20 C.F.R. § 404.1512(a)).

with the 14 year old being disabled with seizures and autism]"; reported having two episodes of depression but "also stated that she functions well when she takes her medicines." (Tr. 20, 22-23, *see* Tr 269-70).  Based on his examination of Reed, Dr. McCutcheon explicitly stated that he was unable to find any physical or mental basis for Reed's claims of disability (Tr. 20, *see* Tr. 269-70).   Despite Reed's contention to the contrary (doc. 13 at n. 2), Dr. McCutcheon's opinion is an acceptable medical opinion entitled to weight. *See* 20 C.F.R. § 416.927(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"); 20 C.F.R. § 416.919a ("A consultative examination is a physical or mental examination purchased for you at our request and expense from a treating source or another medical source").[11]

Additionally, the ALJ's finding that Reed could perform a limited range of light work was supported by Dr. Crotwell's examination findings of August 28, 2009 (which showed mild abnormalities, e.g., "mild scoliosis," "some narrowing of the facets," and "mild disc space collapse . . . but not severe") and his recommendation for conservative treatment (physical therapy and medication) (Tr. 25, *see* Tr. 319-29).  Dr. Mitchell herself deferred to Dr. Crotwell's treatment of Reed's back pain when Reed presented to her on

---

[11] Similarly, there is no merit to Reed's contention that the ALJ rejected Dr. McCutcheon's finding of "no impairments" or that such a rejection is inconsistent with the ALJ's finding that Reed suffers from severe impairments of bipolar disorder, migraines, depression, lumbar degenerative disease and sleep apnea.  *See* Doc. 13 at 7-8 ("The [ALJ] provided no explanation for the internal inconsistencies in simultaneously rejecting the findings of Dr. McCutcheon's examination report [namely, where he "found no impairments"] while relying on it to deny Plaintiff's application in this case.")  Dr. McCutcheon did not find that Reed had no impairments; he specifically stated that "I don't see where this lady has a disability." (Tr.270).

November 6, 2009 (Tr. 405).[12]  One month later, on December 4, 2009, Dr. Mitchell

explicitly stated that the only treatments Reed required were use of a CPAP machine,

psychotherapy, diet, and exercise (Tr. 333-34). Hence, the ALJ identified good cause for

discounting Dr. Mitchell's opinion.[13]

Reed objects to the ALJ's comment that "Dr. Mitchell apparently relied quite

heavily on the subjective report of symptoms and limitations provided by the claimant,

and seemed to uncritically accept as true, most, if not all, of what claimant reported."

(Doc. 13 at 5, *citing* Tr. 25).  Reed does not contend that this comment alone justifies

reversal of the ALJ's decision. The ALJ, not Dr. Mitchell, is charged with evaluating the

credibility of Reed's subjective reports of pain, and the ALJ reasonably found Reed's

complaints of disabling pain were not credible based on all the evidence of record (Tr.

18, 25).[14] *See* 42 U.S.C. § 405(g) (stating the Commissioner is the finder 7 of fact); 20

C.F.R. § 416.929 (stating issues of credibility are resolved by the agency). As the

---

[12] Contrary to Reed's contention (doc. 13 at 6), Dr. Crotwell's report dated August 28, 2009, clearly supports the ALJ's finding of "mild abnormalities" inasmuch as he expressly states that Reed's condition includes "***mild*** scoliosis" and "***mild*** disc spac collapse at 4-5" and "I do ***not*** see any obvious spondylo or anything going on."  (Tr. 319, emphasis added).  Consequently, the ALJ has not proposed "her own medical finding" but has, instead, properly reported and relied on Dr. Crotwell's diagnosis and the conservative treatment he prescribed. (Tr. 23, 25).

[13] Because good cause existed to reject Dr. Mitchell's opinion, the vocational expert's testimony that no jobs exist in the national or regional economy for an individual with the limitations identified by Dr. Mitchell is simply irrelevant.

[14]  Reed has not in her brief identified the ALJ's credibility determination as a basis for reversal.  Hence, this argument has been waived.  *See* Sepulveda v. U.S. Atty. Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005)(" When an appellant fails to offer argument on an issue, that issue is abandoned.").

Eleventh Circuit has recognized, questions of credibility and resolutions of conflicts in the evidence are the province of the agency. *See* Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."), 1242 ("credibility determinations are for the [Commissioner], not the courts").

Because the ALJ identified valid reasons, supported by substantial evidence, for discounting Dr. Mitchell's opinion, the ALJ's decision is due to be affirmed.

CONCLUSION

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff's benefits be and is hereby **AFFIRMED**.

**DONE** this   22nd  day of August, 2012.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**